UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY COOKSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 1:19-cv-00170-NT |
| | ) |
| WARDEN, MAINE STATE PRISON, | ) |
| | ) |
| Respondent | ) |

# RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION

Petitioner, pursuant to 28 U.S.C. § 2254, seeks relief from a state court conviction and sentence. (Petition, ECF No. 1.) Petitioner claims the use of certain evidence deprived him of a fair trial and his attorneys provided constitutionally ineffective assistance of counsel. (Petition at 6–22.) The State asks the Court to dismiss the petition. (Answer, ECF No. 5.)

After a review of the section 2254 petition, the State's request for dismissal, and the record, I recommend the Court grant the State's request and dismiss the petition.

## FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY

### A. Trial

In December 1999, 20-year-old Mindy Gould was babysitting 22-month-old T.C. when they were both shot and killed. In January 2000, Petitioner was indicted on two

---

[1] The facts recounted below are drawn primarily from the state courts' summaries in the orders under review, which factual findings are supported by competent evidence in the record. *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing

counts of murder, in violation of 17-A M.R.S. § 201(1)(A). (*State v. Cookson*, Me. Super. Ct., BANSC-CR-2000-00011, Docket Record at 1.)

The evidence at trial showed that Petitioner and Ms. Gould had periodically lived together for several years before Ms. Gould attempted to separate from Petitioner about one month before her death. The evidence also established that a state court had granted Ms. Gould's request for a protection from abuse order against Petitioner. Over Petitioner's objection, a nurse practitioner testified about her diagnosis and treatment of Ms. Gould for depression as a result of an emotionally abusive relationship with Petitioner.

Police had been unable to locate the murder weapon before trial, but believed it was a 9mm Taurus Model PT-99-AF that was given to Petitioner two years earlier. A firearms expert, Brian Bachelder, testified that shell casings found at the crime scene shared unique characteristics of the murder weapon and matched shell casings collected from previous owners of the PT-99. Another firearms expert, Charles Helms, testified that bullets collected from the crime scene were fired from the same gun as three spent bullets found in Petitioner's yard. The defense did not challenge the ballistics evidence. Instead, defense counsel introduced at trial a bill of sale that reflected a transfer of ownership of the PT-99 from Petitioner to Ms. Gould before date of the murders. The State argued Petitioner manufactured the bill of sale and other evidence regarding his location on the day of the murders.

---

evidence"); *Hensley v. Roden*, 755 F.3d 724, 727 (1st Cir. 2014) (recounting the facts as "derived from the [state court] decision").

In December 2001, the jury returned guilty verdicts on both charges of the indictment. (Docket Record at 13.)

**B.     Motion for New Trial**

Immediately after the jury returned its verdict, defense counsel requested a conference with the state court and revealed that another individual, David Vantol, had recently confessed to the murders.  Counsel initially learned of Vantol's apparent confession approximately one month before the trial.  Based on the Vantol information and other developments, Petitioner later moved for a new trial.  (Docket Record at 14.)

Petitioner's attorneys were skeptical about Vantol's confession when they first met with him because he told them he shot Ms. Gould in self-defense.  At a subsequent meeting, Vantol said Petitioner offered to pay him to kill Ms. Gould and that Petitioner drove him to the scene of the murders.  Because Vantol's testimony would implicate Petitioner and was inconsistent with Petitioner's defense, his attorneys decided not to call Vantol to testify at trial.  Police interviewed Vantol several times and he led them to a 9mm Taurus Model PT-92 that he claimed to have used to shoot Ms. Gould and T.C.  Vantol also provided police with a bag of clothing that appeared to have been buried for a significant period of time.  Police did not find Vantol's account to be credible.  After speaking with police, Vantol received treatment at a psychiatric hospital, where he recanted his confession and said the clothing was unrelated to the murders and was found in a junk car.  According to his treating psychiatrist, Vantol had a relatively low functioning level and was easily influenced by others. Vantol had visited Petitioner in jail several times before trial, and

3

Vantol testified at the motion hearing that Petitioner had provided him with the details and told him to confess to the killings.

Expert testimony at the motion hearing confirmed that the PT-92 was the murder weapon, not the PT-99 that was discussed at trial. Bachelder testified that his ballistics opinion at trial was incorrect because he had mistaken characteristics applicable to a class of firearms for characteristics that are unique to a particular firearm. Bachelder discovered the error when he read an article about the class of firearms at issue in the case. Another firearms expert, Robert Hathaway, testified that if he had performed the ballistics analysis with the information available before trial, he would have concluded that it was inconclusive whether the shell casings from the crime scene matched the shell casings from the prior owners of the PT-99. (New Trial Hearing Transcript at 144:17–145:22.)

In August 2002, the state court denied the motion for a new trial. (Decision and Order on Motion for a New Trial at 1.) The court concluded the state did not intentionally present false evidence and that the murder weapon, the ballistics, and Vantol's confession did not constitute newly discovered evidence because they were either known to the defense at trial or could have been discovered through the exercise of diligence. (*Id.* at 9–17.)

C. **Sentence and Appeal**

In October 2002, the trial court sentenced petitioner to two terms of imprisonment for life, to be served consecutively. (Docket Record at 18–19.) Petitioner sought leave to appeal from the sentence to the Sentencing Review Panel, which, in March 2003, denied leave to appeal. (*State v. Cookson*, Me. L. Ct., SRP-02-0653, Order.) Petitioner also

appealed from the conviction based on the trial court's evidentiary rulings regarding the testimony of the nurse practitioner, the trial court's decisions on the motion for a new trial, and the legality of the consecutive life sentences. *State v. Cookson*, 2003 ME 136, ¶ 1, 837 A.2d 101, 104. In December 2003, the Law Court affirmed the conviction and sentence. *Id.* Petitioner sought a writ of certiorari from the United States Supreme Court; the Supreme Court denied the petition in October 2004. *Cookson v. State*, No. 03-10809, 543 U.S. 852 (Oct 4, 2004).

### D. Postconviction Proceedings

In December 2004, Petitioner filed a state petition for postconviction review. (*Cookson v. State*, Me. Super. Ct., BANSC-CR-04-1043, Docket Record at 1.) The state court held a two-day evidentiary hearing in 2017 and denied the petition in May 2018. (Postconviction Hearing Transcript at 1; Postconviction Order at 19.) In June 2018, Petitioner sought discretionary review with the Maine Law Court. (*Cookson v. State*, Me. L. Ct. PEN-18-247, Docket Record at 2.) The Law Court denied leave to appeal and denied Petitioner's subsequent motion to reconsider. (Docket Record at 3.)

While the state postconviction petition was pending, pursuant to 15 M.R.S. §§ 2136–2138, Petitioner sought DNA testing of the clothing Vantol had provided and a piece of hair collected from Ms. Gould's hand. *See Cookson v. State*, 2011 ME 53, 17 A.3d 1208; *Cookson v. State*, 2014 ME 24, 86 A.3d 1186; *State v. Cookson*, 2019 ME 30, 204 A.3d 125. The state court denied Petitioner's requests for DNA testing of the clothing because of a lack of a chain of custody as a result of the nearly two-year delay before the evidence was turned over to police. *Cookson*, 2014 ME at ¶¶ 17–20, 86 A.3d at 1191–92.

Mitochondrial DNA testing of a single hair recovered from the palm of Ms. Gould's hand excluded Petitioner as the source and was inconclusive as to Vantol; the state court denied Petitioner's motion for a new trial because the evidence did not show that the hair could only have belonged to the perpetrator. *Cookson*, 2019 ME at ¶ 9, 204 A.3d at 127–28.

## DISCUSSION

### A. Legal Standards

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Absent circumstances not relevant to Petitioner's case, a petitioner is required to exhaust available state court remedies before he seeks federal habeas review. 28 U.S.C. § 2254(b), (c).[2] "Before seeking a federal writ of habeas corpus, a state prisoner must

---

[2] Title 28 U.S.C. § 2254(b) and (c) address exhaustion and state:

> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> **(A)** the applicant has exhausted the remedies available in the courts of the State; or
>
> **(B) (i)** there is an absence of available State corrective process; or
>
> **(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (per curiam)) (quotation marks omitted). In *Baldwin,* the Court noted that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan,* 513 U.S. at 365–66).

To exhaust a claim fully in state court in Maine, a petitioner must request discretionary review by the Law Court. *See* 15 M.R.S. § 2131. The Supreme Court has held that a procedural default bars federal review absent a demonstration of cause for the default and prejudice to the petitioner:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).[3]

---

> **(3)** A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> **(c)** An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

[3] Procedural default is a judicial doctrine "related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition." *Lovins v. Parker,* 712 F.3d 283, 294 (6th Cir. 2013) (citing 28 U.S.C. § 2254(b), (c)).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized a "narrow exception" to its holding in *Coleman*, based on equity, not constitutional law: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9, 16. However, when the procedural default relates to post-conviction counsel's actions at the discretionary-review stage rather than at the initial-review stage of the collateral proceedings, habeas relief is not available:

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial . . . .

*Martinez*, 566 U.S. at 16 (citations omitted).

As to federal habeas claims that were adjudicated on the merits in state court, the federal court may not grant relief unless (1) the state court decision was contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court, pursuant to 28 U.S.C. § 2254(d)(1); or (2) the decision was based on an unreasonable determination of the facts, pursuant to section 2254(d)(2).[4]

---

[4] Title 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

As to review of a state court decision under section 2254(d)(1), "[i]t is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson,* 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the [*Strickland v. Washington*, 466 U.S. 668 (1984)] standard itself." *Harrington*, 562 U.S. at 101. Claims of ineffective assistance of counsel are thus subject to a "'doubly deferential'" standard of review, in deference to both the state court and defense counsel. *Woods v. Etherton,* --- U.S. ---, ---, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). State court determinations of fact "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).[5]

---

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

[5] The decisions under review in this case are the Law Court's orders affirming the decisions of the trial court, because the Law Court's decision is the final state court adjudication on the merits of each claim. *See Greene v. Fisher*, 565 U.S. 34, 40 (2011) (noting that the last state-court adjudication on the merits of the petitioner's constitutional claim occurred on direct appeal to the state's supreme court); *Clements v. Clark*, 592 F.3d 45, 52 (1st Cir. 2010) ("A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'") (quoting *Teti v. Bender*, 507 F.3d 50, 56-57 (1st Cir. 2007)).

However, because the Law Court's postconviction order did not explain the Court's reasoning for denying a certificate of probable cause, the federal court may consider the trial court's decision for those claims:

> We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

In *Strickland*, the Supreme Court set forth the relevant Sixth Amendment standard by which claims of ineffective assistance based on counsel's errors are evaluated on the merits; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. A court presumes "that counsel has 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Companonio v. O'Brien*, 672 F.3d 101, 110 (1st Cir. 2012) (quoting *Strickland*, 466 U.S. at 690).

A court considers "the totality of the evidence," and "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

## B. Ineffective Assistance of Counsel

### 1. Vantol Confession

Petitioner argues he was deprived of effective assistance of counsel due because his attorneys mishandled Vantol's confession. Petitioner challenges the scope of his attorneys'

---

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (noting the state may rebut the presumption).

investigation of the confession, the decision not to call Vantol as a witness, and the failure to alert the Court to the confession prior to the conclusion of the trial. The state court concluded that defense counsel acted within the range of reasonable professional assistance given that they interviewed Vantol multiple times and decided that it would not be in Petitioner's interest to investigate further because Vantol's account implicated Petitioner. (Postconviction Decision at 11–12.) The state court also noted that counsel could reasonably have concluded there was little to be gained from further requests for delay in the trial and that Petitioner did not object when counsel informed him that they did not intend to call Vantol to testify. (*Id.* at 12–13.) Citing the fact that Vantol's story changed several times and most credibly implicated Petitioner, the state court determined Petitioner was not prejudiced because there was no reasonable probability that further investigation, delay, or testimony would have produced a different result at trial. (*Id.* at 13–14.)

Given the information available to counsel at the time and counsel's reasonable assessment that Vantol's testimony implicated Petitioner, the state court supportably concluded that counsel's performance was not substandard, and that Petitioner was not prejudiced by counsel's decisions. Petitioner, therefore, was not deprived of his right to effective assistance of counsel.

    2.    **Ballistics**

Petitioner argues he was deprived of effective assistance of counsel due to his attorneys' failure to hire a ballistics expert to question the state's evidence and his attorneys' failure to challenge the ballistics evidence through cross-examination of the state's witnesses. The state court identified two possible strategies for Petitioner's

11

attorneys: (1) hire an expert who might be able to cast doubt on the state's experts linking the murders to the PT-99 or (2) concede the gun issue but try to prove through the bill of sale and other witnesses that Petitioner no longer possessed the gun at the time of the murders. (Postconviction Decision at 16, 18.)

The first strategy might have created doubt as to Bachelder's (one of the state's experts) shell casings analysis regarding Petitioner's PT-99 if the hypothetical expert reached the same conclusion as Hathaway later did. Nevertheless, there still would be no evidence that would undermine Helms' (another of the state's experts) testimony that linked the crime scene bullets to those found in Petitioner's yard. The second strategy, adopted by counsel, had the potential to explain the reason some matching bullets were found in his yard (i.e., he possessed the gun at some point but not at the time of the murders).

In its assessment of the reasonableness of counsel's performance, the state court noted the need to examine the issue without hindsight – that is, without the knowledge that Vantol ultimately produced the PT-92 that was confirmed to be the murder weapon. *Id.* at 15; *see also*, *Janosky v. St. Amand*, 594 F.3d 39, 48 (1st Cir. 2010) ("Where strategic choices are involved, reviewing courts must be careful not to lean too heavily on hindsight"). The state court also noted the *Strickland* Court's teaching that "[t]he reasonableness of counsel's action may be determined or substantially influenced by the defendant's own statements or actions," and emphasized counsel's testimony that they did not pursue the gun issue in part due to "things that Mr. Cookson had been telling us." (*Id.* at 17.)

Although the jury was ultimately unpersuaded by Petitioner's evidence attempting to distance himself from the suspected murder weapon, "the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense." *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994). The state court's conclusions that counsel made a reasonable strategic decision to pursue the possession or ownership defense rather than a ballistics challenge, and that Petitioner was not prejudiced by counsel's decisions because the bullet evidence still linked him to the crime, were not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Accordingly, the decision was not contrary to or an unreasonable application of *Strickland* and its progeny.

3. **Other Ineffective Assistance Claims**

Petitioner also cites several other decisions of counsel (e.g., the decision not to seek DNA testing before trial, the decision not to call witnesses who claimed to see someone who might have met Vantol's description on the morning of the murders) and counsel's performance at sentencing. The state court summarily denied the other grounds for relief. (*Id.* at 5 n.2, 13 n. 7.) Petitioner has failed to demonstrate that counsel's performance was deficient or that he was prejudiced by any of the alleged deficiencies. For example, the state court noted that the jury convicted Petitioner without any DNA evidence, and that no DNA evidence has ever excluded Petitioner. (*Id.* 13 n. 7). The record also reflects that Petitioner's attorneys presented favorable testimony and argued on his behalf at sentencing; Petitioner has not identified any alternative sentencing arguments that could reasonably be

characterized as effective. (Sentencing Transcript at 43:12–55:20). In short, the record lacks any evidence that would support a finding that the state court's rejection of Petitioner's other ineffective assistance claims was contrary to or an unreasonable application of *Strickland* and its progeny.

**C.    State Law Issues**

Petitioner also challenges some of the state court's decisions under state law, which decisions include the state court's evidentiary rulings concerning the testimony of the nurse practitioner. Because habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," federal courts are not permitted "to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also*, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). Federal review of issues like evidentiary rulings or jury instructions are therefore limited to "whether any error rendered the trial so fundamentally unfair that it violated the Due Process Clause." *Kater v. Maloney*, 459 F.3d 56, 64 (1st Cir. 2006); *see also*, *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) ("we have long recognized that a mere error of state law is not a denial of due process") (internal quotation marks omitted).

Petitioner has not established that any of the state court's decisions pursuant to state law were erroneous. Even if the decisions were erroneous, the record does not establish that the impact on the trial were so "fundamentally unfair" as to deprive Petitioner of due process.

**D. Ballistics Evidence**

Petitioner contends his due process rights were violated when the State presented to the jury ballistics evidence that erroneously linked the shell casings at the crime scene to the shell casings from prior owners of the PT-99. "The government violates due process when it obtains a conviction by soliciting or failing to correct false evidence." *United States v. Casas*, 425 F.3d 23, 45 (1st Cir. 2005) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). "The government's main obligation, clearly established by the case law, is that it never present evidence knowing it to be false." *United States v. Pagan-Santini*, 451 F.3d 258, 265 (1st Cir. 2006); *see also*, *United States v. Vega*, 813 F.3d 386, 391 (1st Cir. 2016) ("*Napue* prohibits prosecutors from knowingly presenting false evidence, including false testimony, to the jury"). As the Law Court concluded, the record contains no evidence to suggest that the Bachelder ballistics testimony evidence was anything other than a good faith, though mistaken, opinion. Because the record includes no evidence to establish that the State knowingly presented false evidence, the state court correctly found no due process violation occurred.

**E. The Sentence**

Petitioner contends his consecutive life sentences constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. A sentence to a term of imprisonment "violate[s] the Eighth Amendment only if it is grossly disproportionate to the gravity of the crimes of conviction." *United States v. Wright*, 571 F. App'x 1 (1st Cir. 2014) (citing *Solem v. Helm*, 463 U.S. 277, 288 (1983)). The "grossly disproportionate" standard "is a high bar, rarely surmounted." *Wright*, 571 F. App'x at 1;

*see also*, *Ewing v. California*, 538 U.S. 11, 17 – 18, 30–31 (2003) (no Eighth Amendment violation based on sentence of 25 years to life following three strikes conviction for stealing three golf clubs worth $1200). Petitioner presents no authority to support his contention that two consecutive terms of life imprisonment for two murders violates the Eighth Amendment. The case law is to the contrary. *See e.g.*, *Setser v. United States*, 566 U.S. 231, 236 (2012) ("Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences"); *Lerner v. Gill*, 751 F.2d 450, 454 (1st Cir. 1985) (upholding on other grounds consecutive life sentences for double murder). Accordingly, Petitioner is not entitled to relief on his Eighth Amendment claim.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases. I recommend the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 24th day of February, 2020.